# CarMax®
## RETAIL INSTALLMENT CONTRACT
### Consumer Credit Sale

Contract Number _____

Contract Date ___Mar 23, 2010___

In this Contract, the words "you" and "your" mean anyone signing this Contract as a Buyer or Co-Buyer. The words "we", "us", and "our" mean the Seller or anyone to whom the Seller transfers its rights under this Contract. You understand that you may buy the Vehicle described below for cash or credit. By signing this Contract, you choose to buy the Vehicle on credit under the terms and conditions on all pages of this Contract. If there is a Buyer and a Co-Buyer, you are each individually liable to us for any amount due under this Contract.

Seller: CarMax Auto Superstores, Inc., 2698 JOHN HAWKINS PKWY, HOOVER, AL 35244

Buyer: DEDRIC D DUNCAN, 1336 15TH WAY SW NA, BIRMINGHAM, AL 35211

Co-Buyer: MICHELLE Y MORSBY, 1336 15 TH WAY SW NA, BIRMINGHAM, AL 35211

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. | Total Sale Price The total cost of your purchase on credit, including your downpayment of $7,000.00 |
|---|---|---|---|---|
| 17.49 % | $ 20,474.12 e* | $ 32,329.96 | $ 52,804.08 e* | $ 59,804.08 e* |

*e means an estimate

**Your Payment Schedule will be:**

| Number of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 72 | $ 733.39 | Monthly, beginning May 07, 2010 |

**Security.** You are giving a security interest in the motor vehicle being purchased.

**Late Charge.** If payment is not received in full within 10 days after it is due, you will pay a late charge that is the greater of $10 or 5% of the amount of unpaid installment in default, not to exceed $100.

**Prepayment.** If you pay off the full amount owed under this Contract early, you will not have to pay a penalty.

**Additional Information.** See the remainder of this Contract for additional information about nonpayment, default, any required repayment in full before the scheduled due date, prepayment refunds, and security interests.

---

**Optional GAP Waiver Agreement (GAP contract).** A GAP contract is a debt cancellation agreement. It is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. The charge for a GAP contract is in item D.1. Your GAP contract is a part of this Contract. See your GAP contract for details on the protection it provides.

Term ___72___ (in months)

I want the optional GAP contract.
Buyer Signs: _[signature]_

You agree to buy and we agree to sell you the following Vehicle:

Year/Make/Model 2006/MERCEDES-BENZ/CLS500
VIN WDDDJ75XX6A075066
New _____ Used __X__

The primary purpose and use for which you are purchasing the Vehicle is:
Personal, Family, or Household __X__
Business or Commercial ____ Agricultural ____

As part of this transaction, you sold the following vehicle(s) to Seller as a "Trade-In":

Year/Make/Model _____
VIN _____

Year/Make/Model _____
VIN _____

### YOUR PROMISE TO PAY

You agree to pay us the Amount Financed and Finance Charge provided for in this Contract according to the Payment Schedule above. This is a simple finance charge contract. This means we will figure the Finance Charge on a daily basis at the Annual Percentage Rate on the unpaid part of the Amount Financed. The Finance Charge, Total of Payments, and Total Sale Price shown above are based on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Also, if you pay late it is likely that your final payment will be larger than originally scheduled. You must make your payments to the Seller at the address shown above. If this Contract is transferred, you agree to make your payments to the subsequent holder of this Contract (Assignee) at the address provided by the Assignee or Seller.

### ITEMIZATION OF AMOUNT FINANCED

| A. CASH PRICE | |
|---|---|
| 1. Cash Price of Vehicle | $ 35,998.00 |
| 2. Cash Price of CarMax Accessories | $ .00 |
| 3. CarMax Processing Fee | $ 149.00 |
| 4. Sales / Excise Tax | $ 1,219.96 |
| 5. Other: N/A | $ .00 |
| 6. Other: N/A | $ .00 |
| 7. **Total Cash Price** [1 through 6] | $ 37,366.96 |
| **B. DOWNPAYMENT** | |
| 1. Cash Downpayment | $ 7,000.00 |
| 2. Manufacturer's Rebate | $ .00 |
| 3. Credit From "Trade-In" Sold to CarMax | |
| a. Value of "Trade-In" | $ .00 |
| b. Pay-Off of "Trade-In" | $ .00 |
| c. Net Value of "Trade-In" [a minus b, if a is greater than b] | $ .00 |
| 4. Other: N/A | $ .00 |
| 5. **Total Downpayment** [1 through 4] | $ 7,000.00 |
| **C. UNPAID BALANCE OF CASH PRICE** [A minus B] | $ 30,366.96 |
| **D. OTHER CHARGES INCLUDING AMOUNTS PAID TO OTHERS ON YOUR BEHALF** | |
| 1. Optional GAP Waiver Agreement | $ 399.00 |
| 2. To Public Officials | |
| a. License, Title, and Registration Fees | $ 15.00 |
| b. Filing Fees | $ .00 |
| c. N/A | $ .00 |
| d. N/A | $ .00 |
| e. N/A | $ .00 |
| f. N/A | $ .00 |
| 3. To Consumer Program Administrators, Inc.* for Extended Service Agreement | $ 1,549.00 |
| 4. To N/A for Pay-Off of the "Trade-In" where Pay-Off exceeds value of "Trade-In" [B(3)(b) minus B(3)(a)] | $ .00 |
| 5. Total of Other Charges and Amounts Paid to Others on Your Behalf [1 through 4] | $ 1,963.00 |
| **E. AMOUNT FINANCED** [C plus D] | $ 32,329.96 |

*Seller may retain a portion of this amount.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 1. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials ___DDD___   Co-Buyer's Initials _[signature]_

## RETAIL INSTALLMENT CONTRACT
### Other Important Agreements

**Your Representations.** You promise that you have given true and correct information in your credit application. You understand that in entering this Contract we have relied on the representations you have made to us. Upon request, you agree to provide us with documents and other information necessary to verify any item contained in your credit application.

**Applicable Law.** Federal law and the law of the State of Alabama apply to this Contract. If any provision is not valid, all others stay valid to the extent allowed by applicable law.

**Late Charge.** You will pay a late charge as described in the Late Charge section on Page 1 of this Contract.

**Returned Check Charge.** You will pay a bad check charge of $30 for any payment made by check, draft, negotiable order of withdrawal, or like instrument that your financial institution does not pay or honor.

**Care, Use, and Location of the Vehicle.** You agree to pay us all you owe under this Contract even if the Vehicle is damaged, destroyed, or missing. You agree to keep the Vehicle in good condition and repair. If there is any loss or damage to the Vehicle, you will give us prompt written notice of the loss or damage. You agree not to use the Vehicle for hire or to sell, rent, lease, or transfer any interest in the Vehicle or this Contract. You agree that you will not permit the Vehicle to be used in any illegal manner or expose the Vehicle to misuse, seizure, confiscation, or involuntary transfer. The Vehicle will be kept at the address you provided to us in this Contract as shown on Page 1. You agree to notify us in writing of any change in your address or the location at which the Vehicle is regularly located. You are not allowed to remove the Vehicle from the United States. You may, however, take the Vehicle to Canada as long as it is for a period of 30 days or less.

**Insurance Requirements.** You agree to have physical damage insurance covering loss or damage to the Vehicle as long as amounts are owed under this Contract. The insurance must have comprehensive, collision, fire, and theft coverage in amounts acceptable to us and with the minimum available deductible. All required insurance must be with a properly licensed insurer reasonably acceptable to us and must name us as an additional insured and loss-payee. You agree to give us evidence of all required insurance promptly upon request. You agree that any insurance proceeds payable due to damage or loss of the Vehicle will be paid directly and solely to us. At our choice, we may use the insurance proceeds to repair the Vehicle or to pay amounts owed under this Contract. You agree that we may settle any insurance claim or sign any insurance checks on your behalf as necessary and if allowed by law.

**Failure to Maintain Insurance.** If you fail to maintain the required physical damage insurance, we may buy it for you. At our choice, the insurance we buy may only cover our interest in the Vehicle and be limited to what you owe under this Contract at the time. This means the insurance we obtain may not cover your interest in the Vehicle or any loss that you incur. We will charge you for any insurance we purchase. The insurance we buy may cost more than the insurance you could buy on your own. The charge for the insurance will be the amount advanced for it and a finance charge at the Annual Percentage Rate shown on Page 1 of this Contract or, if less, the highest rate allowed by law.

**Security Interest.** You give us a security interest in the Vehicle, any proceeds received for the Vehicle, and any accessories, equipment, and replacement parts installed on the Vehicle. You also give us a security interest in any insurance, service, or other contracts we finance for you and all proceeds from any insurance, service, or other contracts on the Vehicle, including refunds of premiums or charges from the contracts we finance for you. The security interest you are giving us secures all amounts owed by you under this Contract and all the other agreements you have made in this Contract.

**Optional Service or GAP Contracts.** This Contract may contain charges for an optional service or GAP contract. If you are in default under this Contract, you agree that we may claim benefits under any optional contract or cancel it to obtain a refund for unearned charges and reduce amounts you owe. If you cancel an optional contract, you authorize us to receive any refund for unearned charges and apply it to what you owe under this Contract.

**"Trade-In" and Downpayment.** You promise that you own and have valid title to any vehicle you sold to us as a "Trade-In." You represent that any "Trade-In" vehicle is free from any lien or security interest except as you have disclosed to us in writing. You promise that you have made the downpayment shown in the Itemization of Amount Financed on Page 1 of this Contract and that you have not borrowed it.

**Title, Taxes, and Other Charges.** You agree to make sure that the title to the Vehicle shows our security interest. You also agree that we will be the only party with a security interest in the Vehicle and that our security interest will be the only security interest that appears on the title. You agree that you are, or will be, the registered owner of the Vehicle and that you will comply with all registration, licensing, tax, and title laws that apply to the Vehicle. You agree to pay when due all taxes, fees, repair bills, storage bills, fines, assessments, and other charges relating to the Vehicle. At our choice, we may pay any of these items to protect our interest in the Vehicle. If we do so and if allowed by law, you agree to repay us at our request.

**Default and Required Repayment in Full.** You will be in default if you fail to make any payment required by this Contract. You will also be in default if you break any other promise you have made in this Contract or if a bankruptcy or insolvency proceeding is initiated by you or against you. If you default we may require that you pay all you owe on this Contract at once. All amounts owed following your default will continue to accrue finance charge or interest at the Annual Percentage Rate shown on Page 1 of this Contract or the highest rate allowed by law until paid in full.

**Other Remedies Upon Default.** Upon your default we may take (repossess) the Vehicle from you as long as we do so peacefully. All accessories, equipment or replacement parts will remain with the Vehicle following repossession.

**Getting the Vehicle and Property Back After Repossession.** If we repossess the Vehicle, you have the right to get it back until we sell it. This is your right to redeem. We will tell you what you need to do or how much you need to pay to redeem the Vehicle. If any personal property is in the Vehicle, we will store it for you at your expense. If you do not pick up your personal property, we will sell it if the law allows us to do so.

**Sale of the Repossessed Vehicle.** We will send you a written notice of sale before we sell the Vehicle. We will apply money from a sale to our expenses and then to amounts you owe under this Contract. Our expenses may include costs incurred by us in repossessing the Vehicle, holding and storing it, preparing it for sale, and selling it. If there is money left over, we will pay it to you unless we are required to pay it to someone else. If there is not enough money to pay all you owe, you will have to pay us the remaining balance.

**Collection Costs.** You agree to pay our reasonable attorney's fees, plus court costs, if we refer this Contract for collection or enforcement to an attorney who is not our salaried employee. The attorney's fees will not exceed 15% of the amount owed under the Contract at the time of default and referral.

**Application of Payments and Partial Prepayments.** We may apply each payment to earned and unpaid finance charge and to other amounts you owe under this Contract in any order we choose. If you make a partial prepayment you must still continue to make your regular monthly payments as scheduled in this Contract.

**Delay in Enforcing Rights.** We will not lose any of our rights under this Contract if we delay or refrain from enforcing them. For example, we may extend the time for making some payments without extending others. Our acceptance of any late or partial payment does not excuse your late or partial payment or mean that you may continue to make late or partial payments.

**Telephone Communications.** You agree that we may monitor and record telephone calls regarding this Contract to assure the quality of our service. You consent to our use of prerecorded/artificial voice messages or automatic telephone dialing devices to contact you to service or collect this Contract as the law may allow. Your consent includes using these contact methods to call or send text messages to any telephone number you provide to us, including telephone numbers for which you may incur a charge such as a number assigned to a cellular telephone service.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 2. By initialing below you represent that you have read and agree to all provisions on all pages.
Buyer's Initials _____  Co-Buyer's Initials _____

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements
### ARBITRATION PROVISION

This Arbitration Provision describes when and how a Claim (defined below) may be arbitrated. Arbitration is a way of resolving disputes before one or more neutral persons, instead of having a trial in court before a judge and/or jury. **By signing this Contract, you and we agree to be bound by the terms of this Arbitration Provision.**

IF YOU OR WE CHOOSE ARBITRATION:

- ANY CLAIM WILL BE DECIDED BY ARBITRATION AND NOT IN COURT OR BY A JURY TRIAL.
- DISCOVERY AND RIGHTS TO APPEAL ARE LIMITED BY THE ARBITRATION RULES OF THE ARBITRATION ADMINISTRATOR.
- YOU GIVE UP YOUR RIGHT TO PARTICIPATE AS A REPRESENTATIVE OR MEMBER OF A CLASS IN A CLASS ACTION ("CLASS ACTION WAIVER").
- OTHER RIGHTS THAT YOU OR WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.

a. **What Claims are Covered.** A "Claim" is any claim, dispute or controversy between you and us that in any way arises from or relates to this consumer credit sale, the purchase you are financing by way of this Contract, or the Vehicle and related goods and services that are the subject of the purchase and this Contract, and includes:

- Initial claims, counterclaims, cross-claims and third-party claims;
- Disputes based on contract, tort, consumer rights, fraud and other intentional torts (at law or in equity, including any claim for injunctive or declaratory relief);
- Disputes based on constitutional grounds or on laws, regulations, ordinances or similar provisions; and
- Disputes about the validity, enforceability, arbitrability or scope of this Arbitration Provision or this Contract.

b. **Commencing Arbitration.** Either you or we may require any Claim to be arbitrated. Arbitration begins by giving written notice to the other party of the intent to require arbitration. This notice may be given before or after a lawsuit has been started over the Claim or with respect to other Claims brought later in the lawsuit. Arbitration of a Claim must comply with this Arbitration Provision and the applicable rules of the arbitration Administrator. We will not choose to arbitrate an individual Claim that you bring against us in small claims court or your state's equivalent court, if any. If that Claim is transferred, removed or appealed to a different court, we then may choose arbitration.

c. **Choosing the Administrator.** You may choose either arbitration Administrator listed below:

- American Arbitration Association, 335 Madison Avenue, New York, NY 10017.
- National Arbitration Forum, P.O. Box 50191, Minneapolis, MN 55405.

If we initiate the arbitration proceeding, we will give you 20 days to choose the Administrator. If you do not choose the Administrator within that time, we will choose for you. If for any reason the chosen organization is unable or unwilling or ceases to serve as the Administrator, the other organization will conduct the arbitration. In all cases, any arbitrator must be a lawyer with more than 10 years of experience.

d. **Choosing the Location.** Any arbitration hearing that you attend must take place at a location reasonably convenient to your residence.

e. **Paying for Arbitration.** Each Administrator charges fees to administer an arbitration proceeding. This may include fees not charged by a court. When you choose an Administrator, you should carefully review the fees charged by the Administrator. We will pay these fees if required by applicable law, or if otherwise necessary to ensure that this Arbitration Provision is enforceable. We will not ask you to pay or reimburse us for any fees we pay the Administrator. If we require a Claim to be arbitrated, we will pay or reimburse you for up to $1,000 in fees that would otherwise be charged to you by the Administrator. However, if either we or you require a Claim to be arbitrated, you may tell us in writing that you are unable to pay the fees charged by the Administrator or that you believe those fees to be excessively high. If you do so, we will pay or reimburse you for up to all of the fees that would otherwise be charged to you by the Administrator if your request is reasonable and in good faith. Each party must pay the expense of that party's attorneys, experts, and witnesses, regardless of which party prevails in the arbitration, unless applicable law or this Arbitration Provision provides otherwise.

f. **Class Action Waiver. You give up your right to participate in a class action. This means that you may not be a representative or member of any class of claimants or act as a private attorney general in court or in arbitration with respect to any Claim.** Notwithstanding any other part of this Arbitration Provision, the validity and effect of the Class Action Waiver must be determined only by a court and not by an arbitrator. If a court limits or voids the Class Action Waiver, then this entire Arbitration Provision (except for this paragraph) will be null and void.

g. **Right to Discovery.** In addition to the parties' rights to obtain discovery pursuant to the arbitration rules of the Administrator, either party may submit a written request to the arbitrator to expand the scope for discovery normally allowable under the arbitration rules of the Administrator. The arbitrator will have discretion to grant or deny that request.

h. **Arbitration Result and Right of Appeal.** Judgment upon the award given by the arbitrator may be entered in any court having jurisdiction. In response to a timely request from either party, the arbitrator must provide a brief written explanation of the basis for any award. The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act. However, if the amount of the Claim exceeds $100,000, or if an arbitration award is a "zero" or "take nothing" award, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which must reconsider any aspect of the initial award requested by the appealing party. Reference in this Arbitration Provision to the "arbitrator" means the panel of arbitrators if an appeal of the arbitrator's decision has been taken. Subject to applicable law, costs of such an appeal will be borne by the appealing party regardless of the outcome of the appeal. However, we will consider any good faith, reasonable request for us to pay all or any part of those fees if you are the appealing party.

i. **Governing Law.** This Arbitration Provision is governed by the Federal Arbitration Act and not by any state arbitration law. The arbitrator must apply applicable statutes of limitations and claims of privilege recognized at law, and applicable substantive law consistent with the Federal Arbitration Act. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court.

j. **Rules of Interpretation.** This Arbitration Provision survives the repayment of all amounts owed to us, the transfer of the Contract, and any bankruptcy by you, to the extent not inconsistent with applicable bankruptcy law. Except as provided in paragraph (f), if any part of this Arbitration Provision is determined to be invalid or unenforceable, this Arbitration Provision and the Contract will remain enforceable. In the event of a conflict or inconsistency between this Arbitration Provision and the applicable arbitration rules or the other provisions of this Contract or any other contract between you and us, this Arbitration Provision will govern.

---

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 3. By initialing below you represent that you have read and agree to all provisions on all pages.

Buyer's Initials _DDD_      Co-Buyer's Initials _[signature]_

# RETAIL INSTALLMENT CONTRACT
## Other Important Agreements

### NO LIABILITY INSURANCE INCLUDED
LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.

PROPERTY INSURANCE: YOU ARE REQUIRED TO OBTAIN AND MAINTAIN INSURANCE ON THE VEHICLE, ENDORSED TO PROTECT US AS LOSS-PAYEE. YOU MAY OBTAIN THE INSURANCE FROM ANY AGENT OR INSURANCE COMPANY YOU CHOOSE REASONABLY ACCEPTABLE TO US.

YOUR INSURANCE INFORMATION

LIENHOLDER/LOSS-PAYEE: Santander Consumer     INSURED'S NAME: DEDRIC D DUNCAN

PHYSICAL DAMAGE DEDUCTIBLES – COMPREHENSIVE $ 500.00     COLLISION $ 500.00

INSURANCE COMPANY: INFINITY INS

POLICY NUMBER:     EFFECTIVE DATE 03/23/2010     EXPIRATION DATE N/A

INSURANCE AGENT NAME: INFINITY     TELEPHONE NUMBER:

You agree that you have or will obtain the required insurance coverage as shown above and you acknowledge that this is required by the Insurance Requirements section on Page 2 of this Contract.

USED CAR BUYERS GUIDE. THE INFORMATION YOU SEE ON THE WINDOW FORM FOR THIS VEHICLE IS PART OF THIS CONTRACT. INFORMATION ON THE WINDOW FORM OVERRIDES ANY CONTRARY PROVISIONS IN THE CONTRACT OF SALE.

SPANISH TRANSLATION: GUÍA PARA COMPRADORES DE VEHÍCULOS USADOS. LA INFORMACIÓN QUE VE EN EL FORMULARIO DE LA VENTANILLA PARA ESTE VEHÍCULO FORMA PARTE DEL PRESENTE CONTRATO. LA INFORMACIÓN DEL FORMULARIO DE LA VENTANILLA DEJA SIN EFECTO TODA DISPOSICIÓN EN CONTRARIO CONTENIDA EN EL CONTRATO DE VENTA.

The following notice applies only to purchases primarily for personal, family, or household purposes.

### NOTICE

ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

### VEHICLE RETURN POLICY

You may return the Vehicle to CarMax for a refund and rescind this Contract within 5 calendar days if the condition of the Vehicle does not change. This policy only applies to used vehicles.

### ENTIRE AGREEMENT

This Contract contains the entire agreement between you and us relating to this Contract. We may agree to extend or defer a payment and provide you written confirmation. Any other change to this Contract must be in a writing signed by us. No oral modifications to this Contract are binding.

This Contract has 4 pages, plus any optional GAP Waiver Agreement. This is Page 4. By signing below you represent that you have read and agree to all provisions on all pages, including the Arbitration Provision on Page 3 of this Contract. You are also confirming that you have received a completely filled-in copy of this Contract and any optional GAP Waiver Agreement, each of which has been signed by the Seller.

**CAUTION - IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Seller: CarMax Auto Superstores, Inc.     Buyer's Signature: [signature]
By: [signature]     Co-Buyer's Signature: [signature]

### ASSIGNMENT

Seller hereby sells, assigns and transfers to Santander Consumer     (Assignee) this Contract, all obligations of Buyer and Co-Buyer hereunder, all rights, powers, and privileges herein given to Seller, and all right, title, and interest of Seller in and to the property securing this Contract. If on the date of this assignment there is in effect a Dealer Agreement between Seller and Assignee pertaining to the sale of contracts to Assignee by Seller, the sale and assignment of this Contract to Assignee is made subject to all the terms and conditions of that Dealer Agreement.

Seller/Assignor: [signature]
Date: Mar 23, 2010     Title: [signature]